IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARL GALLO, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:20-CV-423-MAB |
| | ) |
| TOM HUMRICKHOUSE, | ) |
| JESSE JOHNSON, | ) |
| PATRICK HOXWORTH, | ) |
| DENNIS PEDIGO, and | ) |
| MICHAEL CLARK, | ) |
| | ) |
|        Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendants Michael Clark, Patrick Hoxworth, Tom Humrickhouse, Jesse Johnson, and Dennis Pedigo (Doc. 65; *see also* Doc. 66). For the reasons explained below, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiff Carl Gallo, an inmate of the Illinois Department of Corrections, brought this civil action pursuant to 42 U.S.C. § 1983 alleging that officers at Big Muddy Correctional Center retaliated against him for assisting other inmates in the law library and writing a grievance (Doc. 1; Doc. 13). Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Gallo was permitted to proceed on a First Amendment

claim of retaliation against Defendants Clark, Hoxworth, Humrickhouse, Johnson, and Pedigo (Doc. 13).[1]

The specific incidents of retaliation alleged by Gallo began on December 19, 2017, when Officer Johnson refused to let him bring his legal documents to his law library job assignment. According to Gallo, he carried a folder every day to his job assignment, and it was never an issue.

Gallo further alleged that on May 1, 2018, he had to leave his job in the law library to go on a call pass to the clothing room, and he then went to the cellhouse to drop off his clothes before returning to work. In the cellhouse, Officers Johnson and Humrickhouse began harassing, threatening, intimidating, and bullying Gallo and would not let him return to his job assignment. Gallo alleged that he usually did not have an issue returning to his job assignment after a call pass. Officer Johnson wrote Gallo a disciplinary report for disobeying a direct order, which Gallo claims was bogus. Officers Humrickhouse and Jullious fired Gallo from his job. Officer Hoxworth found Gallo guilty on the disciplinary report without checking to see if Gallo did, in fact, have a call pass on May 1st.

Gallo alleges that on May 8, 2018, he was in the law library on a call pass, when he was removed by Lt. Jullious and Officer Humrickhouse and put in segregation on investigative status without a legitimate reason. Gallo alleges that Lt. Jullious said, "you don't run anything around here I run it," and Officer Humrickhouse said, "you won't be going to the library anymore." Gallo alleges that Officer Pedigo came to his segregation

---

[1] Plaintiff was also permitted to proceed against "Lt. Jullious," however, Jullious was later dismissed when he could not be located and served with process (Doc. 13; Doc., 50).

cell and harassed him about his personal property. When Gallo was released from segregation, his food and coffee were missing.

Finally, Gallo alleges that on May 10, 2018, he was interviewed by Lieutenant Clark from Internal Affairs regarding the situation with his work assignment and call pass. On May 25th, Lt. Clark informed Gallo he had verified that Gallo did, in fact, have a clothing room call pass on May 1st. Gallo contends that Lt. Clark's actions were retaliatory because Clark did not verify Gallo's version of events sooner.

Defendants filed a motion for summary judgment on the issue of exhaustion on June 2, 2022 (Doc. 65; *see also* Doc. 66). Their motion indicates that the ARB's records were searched for grievances submitted by Gallo (*see* Doc. 66). There were six grievances that raised issues arising from Gallo's incarceration at Big Muddy, but only two were related to the claims at issue (*Id.*). Defendants contend that while those two grievances cover *some* of the conduct alleged in Gallo's complaint, neither grievance was fully exhausted (*Id.*). Gallo filed a response in opposition to the motion for summary judgment (Doc. 68). He reiterated the allegations from his complaint that he actually submitted five grievances regarding the issues at hand but failed to receive responses to them (*Id.*). Defendants did not file a reply brief.

An evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on November 2, 2022. Gallo was the only witness who testified. He explicitly stated that he wanted to rely on the facts as set forth in the complaint and his response to Defendants' motion for summary judgment.

## FINDINGS OF FACT

The two grievances mentioned by Defendants are dated May 3, 2018 and June 7, 2018.

The May 3, 2018 grievance concerns the events of May 1 and 2, 2018, when Gallo alleges that he was not allowed to return to his job assignment following a call pass, was given a ticket, and was fired from his job (Doc. 66-4, pp. 61–64; *see also* Doc. 68; Doc. 1, pp. 7, 24–25, 35–38). Gallo contends that he submitted the grievance to both the warden (as an emergency grievance) and to the counselor (as a non-emergency grievance) (Doc. 1, pp. 7, 24–25, 35–38). Gallo further contends that after two weeks passed without a response from the counselor or the warden, he sent a copy of the grievance to the ARB "to insure [sic] it was recorded in a timely manner" (Doc. 1, p. 7). He also included a letter to the ARB dated May 20, 2018, which stated that he had not received a response from either the warden or the counselor and he asked the ARB for advice on how he should proceed (Doc. 66-4, p. 64). The ARB received the grievance on May 23, 2018, and returned it to Gallo without a final review on the merits because it did not include responses from the counselor, the grievance officer, or the warden (Doc. 66-4, pp. 61–64).

The June 7, 2018 grievance complains about the ticket that Gallo received on May 1, 2018 and the related disciplinary hearing (Doc. 66-4, pp. 55–60; *see also* Doc. 1, pp. 8, 26–31, 43–45; Doc. 68, p. 2). The ARB received the grievance on June 13, 2018 and returned it to Gallo without a final review on the merits because it did not include responses from the grievance officer or the warden (Doc. 66-4, pp. 55–60). Gallo did not specifically address whether he also submitted this grievance at Big Muddy (*see* Doc. 1, pp. 7–8; Doc.

Page 4 of 14

68). However, he stated generally in his written brief that "none of th[e] grievances listed in plaintiffs complaint," which would include the June 7th grievance, "have ever/never been seen again or responded to at all. . . . Plaintiff has no way of knowing exactly what happened after these grievances were mailed in the appropriate mail boxes . . . ." (Doc. 68, p. 2). Gallo also testified generally at the hearing that he submitted all of the grievances he mentioned "in the correct manner" (*see also* Doc. 1, p. 8; Doc. 68, p. 2).

According to Gallo, there were additional grievances beyond the two mentioned by Defendants. He claims he also submitted a grievance dated May 15, 2018 (Doc. 1, pp. 7, 39–40; Doc. 68, p. 1). In this grievance, Gallo complained that he was being "harassed, intimidated, retaliated, and bullied" by Lt. Jullious and Officer Humrickhouse, and he described the events of May 8th when he was removed from the law library and taken to segregation, which he asserts occurred because he wrote a grievance on May 3rd "for the unjustified fireing [sic] of me by Jullious per Humrickhouse request" (Doc. 1, p. 40). Gallo claims that since he was in segregation, he submitted this grievance by putting it in his cell door, which was the only way he could submit a grievance while in segregation (Doc. 68, p. 1). According to Gallo, he realized in late June that he had never received a response to May 15th grievance, so he resubmitted it on July 1st, explicitly stating "this is the second grievance being written because the first one written on 5-15-18 has not been responded too [sic]" (Doc. 1, pp. 7, 41–42). Gallo contends that he submitted the July 1st grievance by placing it in the grievance mailbox in the cell house (*Id.* at p. 7). He alleges he never received a response to either the May 15th or July 1st grievances (*Id.*)

Gallo further claims that he submitted a grievance dated June 25, 2018 (Doc. 1, pp. 8, 21–23, 32–34). In this grievance, he complained that his commissary items were missing when he was released from segregation and that it was Officer Pedigo's fault (*Id.* at 32–34). Gallo received responses from the counselor and the grievance officer and a final decision from the warden dated August 9, 2018, denying the grievance (*see id.*). Gallo then signed the section of the grievance indicating that he was appealing to the ARB and dated it August 12, 2018 (*Id.*). Gallo claims he "never received a response from the ARB after putting it in the institutional mail" (*Id.* at p. 8).

## LEGAL STANDARD

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a

prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014).

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Failure to do so means failure to exhaust. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

As an inmate in the IDOC, Gallo was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). The normal grievance process usually involves three steps. First, the offender must submit a grievance to their counselor within 60 days of the incident, occurrence, or problem, and after the counselor responds, the grievance goes to the grievance officer. *Id.* at § 504.810(a). However, if the grievance concerns discipline, then it bypasses the counselor and goes directly to the grievance officer. *Id.* The grievance officer tenders a recommendation to the warden within two months after receipt of the written grievance, "when reasonably feasible under the circumstances." *Id.* at §

504.830(e). The warden then reviews the recommendation and provides the inmate with a written decision on the grievance. *Id.*

Alternatively, an inmate may request that a grievance be handled as an emergency by submitting the request directly to the warden. *Id*. at § 504.840. If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is processed on an expedited basis. *Id*. On the other hand, if the warden determines that the grievance does not involve an emergency, the inmate is notified in writing that he or she may resubmit the grievance through the normal grievance process. *Id*.

Regardless of whether the grievance was processed in the normal manner or as an emergency, if the inmate is unsatisfied with the warden's decision, he or she has thirty days from the date of the warden's decision to appeal to the Administrative Review Board ("ARB"). ILL. ADMIN. CODE, tit. 20, § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director of the IDOC, who then makes a final decision "within six months . . . when reasonably feasible under the circumstances.". *Id.* at § 504.850(d), (e).

The Seventh Circuit requires strict adherence to the exhaustion requirement; however, an inmate is required to exhaust only those administrative remedies that are available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting. *Pyles*, 829 F.3d at 864; *Lewis v. Washington,* 300 F.3d

829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

## DISCUSSION

The Court will begin by discussing the two grievances that were the subject of Defendants' motion for summary judgment: the grievance dated May 3, 2018 and the grievance dated June 7, 2018.

With respect to the May 3rd grievance, Defendants contend this grievance was not exhausted because Gallo did not follow the grievance process outlined in the Illinois Administrative Code (*e.g.,* Doc. 66, pp. 8–9). If he submitted the grievance directly to the ARB, then he improperly bypassed the facility level. But even if he had submitted the grievance at the facility level, Defendants argue that he did not wait long enough for a response before he went to the ARB. He waited only two weeks for a response from the facility and then went straight to the ARB without ever making any attempt to follow-up with officials at Big Muddy about the grievance. The Court is unpersuaded by Defendants' argument.

To begin with, Gallo said that he submitted both an emergency and a non-emergency version of the May 3rd grievance at Big Muddy but never received a response from either the warden or the counselor. His story has been consistent since he filed his complaint in this case two and a half years ago. There are no apparent internal inconsistencies in his story, nor is his story inherently implausible. And he was composed and candid while testifying during the hearing. Defense counsel made no serious attempt to discredit Gallo's story. Defense counsel did not offer any records from Big Muddy that might call Gallo's story into question. Given Gallo's uncontested and unchallenged

testimony, the Court finds him credible that he submitted the May 3rd grievance at the facility but never received a response.

In light of that finding, it is of no consequence that Gallo sent the May 3rd grievance to the ARB two weeks after he submitted it at Big Muddy. The grievance process at Big Muddy should have continued regardless of the fact he sent a copy of the grievance to the ARB. His submission to the ARB did not somehow interrupt or terminate the grievance process at Big Muddy or relieve officials at Big Muddy from their obligation to respond to his grievance. The ARB essentially told Gallo his submission was premature, and he had to obtain responses from the counselor, grievance officer, and warden before he could come to the ARB. Simply put, Gallo's submission to the ARB was nothing more than an unnecessary detour that had no effect on the grievance process already initiated at Big Muddy.[2] And that process was rendered unavailable when Big Muddy officials failed to respond to the May 3rd grievance. Consequently, that grievance is deemed to be fully exhausted. *See Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (citations omitted); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

Turning next to the June 7th grievance, Defendants make the same arguments—either Gallo improperly submitted the grievance directly to the ARB or, if he submitted the grievance at the facility level, then he did not wait long enough for a response before

---

[2] It would be a different story if, for example, after the grievance was returned by the ARB, Gallo received a response from the counselor and/or the warden but took no further action to send the grievance on to the next level because he thought had already done all that he needed to do when he got it back from the ARB.

he went to the ARB (*e.g.,* Doc. 66, pp. 8–9). The Court is once again unpersuaded. Gallo suggested in his written brief that he submitted the June 7th grievance at Big Muddy but never received a response (*see* Doc. 68, p. 2). His testimony at the hearing suggested the same. Defense counsel made no attempt at the hearing to nail down Gallo's story regarding the June 7th grievance and did not ask a single question about it. The burden is on Defendants to prove that Gallo did *not* exhaust his administrative remedies. He is not required to prove that he *did*. Although Gallo's testimony is general and a bit vague, it is the only evidence on the issue. It has not been discredited in any fashion by defense counsel and there is nothing about it that is inherently implausible or unbelievable. The Court can only conclude that Defendants failed to carry their burden on this issue and finds that Gallo submitted the June 7th grievance at Big Muddy but never received a response. The failure to respond rendered the grievance process unavailable, and the June 7th grievance is deemed to be fully exhausted. Once again, it is of no consequence that Gallo also submitted the grievance to the ARB.

As for the other three grievances that Gallo says he submitted, which were dated May 15, June 25, and July 1, 2018, Defendants submitted no evidence and made no arguments about these grievances (*see e.g.,* Doc. 66). Rather, defense counsel made clear at the *Pavey* hearing that she did not believe these grievances were related to the allegations in this case. She repeatedly asserted the only grievances that referenced the retaliation at issue were the two grievances discussed in the motion for summary judgment: the May 3, 2018 and June 7, 2018 grievances. Defense counsel even got Gallo state that the May 3rd and June 7th grievances were the only relevant grievances. But that

does not necessarily make it true. Rather, the Court looks to the actual substance and content of the grievances to determine what relevance, if any, they have. And here, the Court has reviewed the grievances dated May 15, June 25, and July 1, 2018, and they all plainly pertain to allegedly retaliatory incidents alleged in the complaint.

In particular, in the May 15, 2018 and July 1, 2018 grievances, Gallo complained about being harassed by Lt. Jullious and Officer Humrickhouse, removed from the law library, and taken to segregation (Doc. 1, pp. 39–40, 41–42). This same conduct was mentioned in the complaint as an act of retaliation and acknowledged by the Court as such in the threshold order (Doc. 1, p. 15; Doc. 13, p. 5). In the June 25, 2018 grievance, Gallo complained about how Officer Pedigo mishandled his personal property when he was sent to segregation and how that property was missing when he was released from segregation (Doc. 1, pp. 21–23, 32–34). Once again, this same conduct was mentioned in the complaint as an act of retaliation and acknowledged by the Court as such in the threshold order (Doc. 1, p. 15; Doc. 13, p. 5). Accordingly, the Court concludes that the May 15, June 25, and July 1, 2018 grievances pertain to the issues in this case, despite Defendants' argument otherwise. Furthermore, the Court credits the uncontested evidence from Gallo that he submitted the May 15th and July 1st grievances at Big Muddy but never received any type of response. The Court likewise credits the uncontested evidence that Gallo submitted the June 25th grievance to the ARB but never received a response. These failures to respond rendered the grievance process unavailable as to the May 15th, June 25th, and July 1st grievances, and they are deemed to be fully exhausted.

The Court further finds that the five grievances at issue sufficiently cover Gallo's

allegations that he was the subject of retaliation when (1) Defendants Johnson and Humrickhouse (and non-Defendant Jullious) would not let him return to his job assignment on May 1, 2018, wrote him an unsubstantiated disciplinary report, and fired him from his job; (2) Defendant Hoxworth found him guilty of the unsubstantiated disciplinary report; (3) Defendant Humrickhouse (and non-Defendant Jullious) placed him in segregation on investigative status on May 8, 2018; (4) Defendant Pedigo confiscated his property while he was in segregation; and (5) Defendant Clark dawdled in investigating Gallo's version of events, which kept Gallo locked up in segregation for approximately 17 days. However, none of the five grievances at issue make any mention of the purported retaliation in December 2017 when Defendant Johnson refused to allow Gallo to take legal documents to his job assignment. Consequently, this limited aspect of Gallo's retaliation claim will be dismissed.

## CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by filed by Defendants Michael Clark, Patrick Hoxworth, Tom Humrickhouse, Jesse Johnson, and Dennis Pedigo (Doc. 65) is **GRANTED in part and DENIED in part.** It is granted as to Gallo's claim that Defendant Johnson retaliated against him in December 2017 and denied in all other respects.

This matter will proceed on the First Amendment claim that Defendants Clark, Hoxworth, Humrickhouse, Johnson, and Pedigo retaliated against Gallo in various ways in May 2018 for assisting other inmates in the law library and writing a grievance. The stay on discovery on the merits of Gallo's claims (*see* Doc. 55) is **LIFTED**, and the parties

can proceed with discovery. A new schedule will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: November 23, 2022**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**