IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARL GALLO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-CV-423-MAB |
| | ) |
| TOM HUMRICKHOUSE, | ) |
| JESSE JOHNSON, | ) |
| PATRICK HOXWORTH, | ) |
| DENNIS PEDIGO, and | ) |
| MICHAEL CLARK, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment filed by Defendants Tom Humrickhouse, Jesse Johnson, Patrick Hoxworth, Dennis Pedigo, and Michael Clark, (Doc. 91), which is unopposed due to Plaintiff's failure to file a response in opposition. For the reasons stated below, the motion is granted.

### BACKGROUND

Plaintiff Carl Gallo filed this lawsuit pursuant to 42 U.S.C. § 1983 when he was an inmate of the Illinois Department of Corrections, alleging that guards at Big Muddy River Correctional Center ("Big Muddy") retaliated against him for helping other inmates in the law library and for filing a grievance (Doc. 1, Doc. 13). The scope of this lawsuit was narrowed through a threshold review of the complaint pursuant to 28 U.S.C. § 1915A (Doc. 13), the preliminary dismissal of Defendant Jullious, whom the United States Marshals Service was unable to locate and serve (Doc. 50), and a round of summary

judgment on the issue of exhaustion of administrative remedies (Doc. 74). What remained is Plaintiff's First Amendment retaliation claim against Defendants Clark, Hoxworth, Humrickhouse, Johnson, and Pedigo (Doc. 74, p. 13).

After an unsuccessful attempt to mediate a settlement, the parties spent approximately one year conducting discovery (*see* Docs. 75, 78, 79, 81). On January 12, 2024, Defendants filed their motion for summary judgment on the merits of Plaintiff's claim (Doc. 91; *see also* Doc. 92). They provided the requisite notice to Plaintiff advising him of the consequences of failing to respond to the motions for summary judgment and the necessity of supporting his response with affidavits or other documentary evidence (Doc. 93). *See Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996); *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). Despite the notice, Plaintiff failed to file a response within the 30-day window for doing so. *See* SDIL-LR 7.1(b)(1)(A). However, shortly thereafter, Plaintiff filed a motion asking for additional time to file his response and explained that he had recently been released from prison and was finding it difficult to draft his response while adjusting to life on the outside (Doc. 97). The Court granted Plaintiff's motion and gave him a new deadline of April 30, 2024, to respond to Defendants' motion for summary judgment (Doc. 98). That deadline came and went, and Plaintiff has yet to file anything.

## FACTS

Plaintiff's failure to respond to Defendants' motions for summary judgment is deemed an admission that Defendants' version of the facts is true. SDIL-LR 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for

purposes of summary judgment unless specifically disputed."). Therefore, the facts asserted by Defendants are deemed admitted to the extent that they are supported by evidence in the record. *See* FED. R. CIV. P. 56(e)(2); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations omitted). Defendant's facts are also supplemented by other facts the Court came across in its review of the evidence that felt important to establish a cohesive narrative of the events at issue.

Plaintiff worked as a clerk in the law library at Big Muddy (Doc. 92-1, pp. 34, 35). His shift was from 8:00 a.m. to around 3:00 p.m. (*Id.* at p. 35). Under the prison's procedures, when Plaintiff left to go to work in the morning, an officer signed him out of the cellhouse on a log sheet (*Id.* at p. 38). When he had a call pass during his shift at work, he was not allowed to go straight from the library to the call pass (*see id.* at pp. 37, 38). Rather, he had to go back to his cellhouse, where an officer would sign his call pass and then mark on the log sheet that he was on the call pass (*Id.* at p. 38). When he was done with his call pass, he had to go back to the cellhouse again and get signed out to go back to work at the library (*Id.*).

On May 1, 2018, Plaintiff went to his job as usual at 8:00 a.m., but had three call passes that day: for dental, the clothing room, and the physician's assistant (Doc. 92-1, pp. 32. 34–35, 37). He attended his first call pass to the dentist at 10:00 a.m. (*Id.* at pp. 36, 39). After he was finished at the dentist, Plaintiff went back to the cellhouse, and he asked if he could go to "miss out chow" since he had missed the line to go to lunch while he was at the dentist, and Defendant Humrickhouse gave him permission to do so (*Id.* at pp.

39, 40, 45; Doc. 1, p. 10).¹ After he ate lunch, Plaintiff returned to the cellhouse and was signed out on his 11:30 a.m. call pass to the clothing room (Doc. 92-1, p. 41; *see also* Doc. 1, pp. 10–11). He was only gone for about five or ten minutes before he returned to the cellhouse (Doc. 92-1, pp. 41–42). He went up to his cell to put his clothing away and then went back downstairs to return to work (*Id.* at pp. 41–42).

Defendants Johnson and Humrickhouse were standing at the desk and asked Plaintiff where he was going, and he said he was going to work (*Id.* at p. 43). Defendant Johnson said Plaintiff could not go because he had missed the line and to go back to his cell (Doc. 92-1, pp. 42–43; *see also* Doc. 1, pp. 11, 29). Plaintiff explained to Johnson and Humrickhouse that he had not missed the 11:00 a.m. line—he went to lunch late, then had a call pass, and now he needed to go back to work (Doc. 92-1, p. 43; Doc. 1, pp. 11, 29). Defendant Johnson said "I don't care" or "that doesn't matter" and reiterated that Plaintiff missed the line and needed to go back to his cell (Doc. 92-1, pp. 42–43; Doc. 1, pp. 11, 29). Plaintiff testified that he usually did not have an issue returning to work after a call pass, and he asked why the officers were messing with him and repeated that he had just come back from a call pass and needed to go back to work (Doc. 92-1, pp. 43–44; Doc. 1, pp. 11, 29). Defendant Johnson then said something to the effect of "Don't make me tell you again" or "I just gave you two direct orders, don't make it three" (Doc. 91-2, p. 44; Doc. 1, pp. 11, 29). When Plaintiff said "I don't understand," Johnson demanded

---

¹ Plaintiff indicated that the line for inmates to go to lunch left the cellhouse "at about 10:15 or whatever time it was" (Doc. 92-1, p. 47). After lunch, the inmates returned to the cellhouse and another line went out at 11:00 a.m. for inmates to go to school or back to work (*Id.* at pp. 43, 45).

Plaintiff's ID (Doc. 92-1, p. 44; Doc. 1, pp. 11, 29). Humrickhouse said "now you're fired . . . [and] don't have to worry about working" (Doc. 92-1, p. 44; Doc. 1, pp. 11, 29). Plaintiff went back to his cell and stayed there until his 2:00 p.m. call pass, which Johnson and Humrickhouse allowed him to attend (Doc. 92-1, pp. 44, 46).

The next morning when Plaintiff tried to go to work, Johnson and Humrickhouse stopped him and told him, "You're fired. Lieutenant Jullious said you're fired" (Doc. 92-1, p. 47). When Plaintiff saw Lt. Jullious at lunch, he asked how he could have been fired when he had not even received a ticket (*Id.*; Doc. 1, p. 36). Lt. Jullious said that he had the power to fire Plaintiff, that Plaintiff was in fact fired, and that he would also receive C grade (Doc. 92-1, p. 47; Doc. 1, p. 12). Plaintiff testified that after he left the chow hall and was walking back to his cellhouse, Defendant Humrickhouse handed him a ticket for disobeying a direct order the previous day (Doc. 92-1, p. 48). The ticket, however, indicates that it was served on Plaintiff by Defendant Hoxworth on May 2, 2018 at 8:00 a.m. (Doc. 92-2, p. 2).

Plaintiff wrote a grievance dated March 3, 2018, about the events of the previous two days where he was not allowed to return to his job assignment following a call pass, was given a ticket, and was fired from his job (*see* Doc. 74, p. 4). Plaintiff said that he submitted the grievance to both the warden (as an emergency grievance) and to the counselor (as a non-emergency grievance) but never received a response to either (*Id.*).

An Adjustment Committee hearing on the disciplinary ticket was held on May 7, 2018 (*see* Doc. 92-2, p. 1). The report from the hearing indicates that Branden Schrader was the chairperson of the Committee but does not indicate who else was on the

Committee (*see* Doc. 92-2, p. 1), According to Plaintiff, Defendant Hoxworth was also on the Committee (Doc. 92-1, pp. 49, 56–57). Plaintiff explained to the Committee that he did not miss the line to return to work—he had been out on a call pass (Doc. 92-1, p. 50; *see also* Doc. 92-2, p. 1). The Committee indicated that they would check to see if he had a call pass and if he did, they would expunge the ticket (Doc. 92-1, p. 50).

Plaintiff was ultimately found guilty on the ticket (Doc. 92-2, p. 1). The Adjustment Committee Report indicates that "Offender 360 was checked . . . and no 11:00am clothing call pass was logged for Inmate Gallo B18014 on 5-1-18" (*Id.*). Plaintiff was given one month on C grade, and removed from his job assignment (*Id.*). According to Plaintiff, the Committee could have checked the Clothing Room's documentation as to whether he had been there on a call pass or checked the cellhouse log book, but Hoxworth refused, saying "I'm not doing all of that" (Doc. 92-1, pp. 50, 53; *see also* Doc. 1, p. 14).

On May 8, 2018—the day after the Adjustment Committee Hearing—Plaintiff was in the law library on a call pass related to upcoming court deadlines (Doc. 92-1, p. 54). Lieutenant Jullious saw Plaintiff in the law library and demanded to know why he was there when he had been fired (*Id.*). Plaintiff explained that he was on a call pass (*Id.*). Plaintiff testified that Lt. Jullious left the library and verified the call pass, then went and talked to the major, and then went to the administration building, before eventually returning to the library with Defendant Humrickhouse (*Id.*). They handcuffed Plaintiff and took him to segregation on investigative status, saying "you don't [run] nothing around here, we run this" (*Id.*; *see also* Doc. 1, p. 15).

Plaintiff alleged that when he arrived in segregation, Defendant Pedigo told him

that he was under investigation because he was in the library after he had been fired by Lt. Jullious (Doc. 1, p. 15). Later, Pedigo told Plaintiff that he needed to get rid of some of his property so that his food and coffee would fit in his personal property box (*Id.*). Plaintiff looked in the box and saw various items that he claimed were "state property" and should not have been in his *personal* property box (e.g., mattress cover, blanket, pillow, shirt, and pants) (*Id.*). He removed the state property items and put his food, coffee, and other personal property in the box (*Id.* at p. 16). However, when he was released from segregation on May 25, 2018, all of the state property items were back in his box and his food and coffee were gone (*Id.*).

On May 10, 2018, while in segregation, Plaintiff was interviewed by Defendant Clark, who was an internal affairs officer regarding his ticket and whether he was out on a call pass (Doc. 1, p. 16). Plaintiff claimed Defendant Clark indicated he would check the cellhouse log sheet and the clothing room file to verify the call pass (*Id.*). On May 25, 2018, Defendant Clark told Plaintiff that he did not check those records but rather spoke to his former supervisor at the library and verified that Plaintiff did in fact have a call pass (*Id.*)

## ANALYSIS

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th

Cir. 2021). Instead, the court's task is to view the record and draw all reasonable inferences in the light most favorable to the non-moving party and decide if there is a genuine material dispute of fact that requires a trial. *Stewart*, 14 F.4th at 760; *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014).

Where, as here, "a nonmovant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment was proper given the undisputed facts,' with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

As previously mentioned, Plaintiff is proceeding on a First Amendment retaliation claim. To prevail, Plaintiff must show that he engaged in activity protected by the First Amendment, Defendants took adverse action against him likely to deter future protected activity, and his protected activity was a motivating factor in Defendants' decision to subject him to the adverse treatment. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020) (citing *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012)). If Plaintiff makes this prima facie showing, the burden shifts to Defendants to demonstrate "that the activity would have occurred regardless of the protected activity." *Manuel*, 966 F.3d at 680 (citation omitted). The burden then shifts back to Plaintiff to demonstrate that Defendants' proffered reason is pretextual or dishonest. *Manuel*, 966 F.3d at 680 (citation omitted).

Plaintiff alleged that Defendants retaliated against him in the following ways: that (1) Defendants Johnson and Humrickhouse harassed him and would not let him return to his job assignment on May 1, 2018, fired him from his job, and wrote him an

unsubstantiated disciplinary report on May 2, 2018; (2) Defendant Hoxworth found him guilty of the unsubstantiated disciplinary report; (3) Defendant Humrickhouse placed him in segregation under investigation; (4) Defendant Pedigo confiscated his property while in segregation; and (4) Defendant Clark delayed in verifying Plaintiff's version of events and debunking the disciplinary ticket (*see* Doc. 1; Doc. 13). Plaintiff further alleged Defendants' actions were all done to retaliate against him for helping other inmates in the law library and/or for writing a grievance about Lieutenant Jullious on May 3, 2018 (Doc. 1; Doc. 13).

Defendants make a number of arguments as to why summary judgment is appropriate (*see* Doc. 92). Their first argument is that Plaintiff cannot succeed on his retaliation claim because the record is devoid of any evidence showing that their conduct was motivated by Plaintiff's protected First Amendment activity (Doc. 92, pp. 7–9). The Court agrees.[2]

The "motivating factor" element of a retaliation claim "amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020) (citing *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012)). This link can be established through direct evidence or circumstantial evidence, such as suspicious timing, ambiguous statements, or behavior toward or comments directed at others in the protected group. *Manuel*, 966 F.3d at 680 (citing *Long v. Teachers' Ret. Sys. of Illinois*, 585

---

[2] Defendants did not challenge for summary judgment purposes, and the Court expresses no opinion on, whether Plaintiff's speech was constitutionally protected or whether Defendants' actions constituted deprivations that were likely to deter future speech.

F.3d 344, 350 (7th Cir. 2009)). The important thing is that the evidence offered demonstrates "that the protected activity and the adverse action are not wholly unrelated." *Kidwell*, 679 F.3d at 966 (quoting *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000)).

Here, Plaintiff has not identified any evidence that would allow a reasonable jury to find that Defendants' conduct was motivated by a desire to retaliate against him or dissuade him from doing his job and assisting prisoners in the law library or from writing grievances. At his deposition, Plaintiff provided the following testimony:

> Q: What evidence do you have that any of the actions of the Defendants were done in retaliation?
>
> A: Because of their - - their actions and what they did after I had the situations with the - - with knowing how I am, and what my job assignment was.

(Doc. 92-1, pp. 58–59). Defense counsel got Plaintiff to clarify that he believed he engaged in constitutionally protected speech by helping other inmates file grievances and lawsuits and by filing his own grievance (*Id.* at pp. 59–60). Defense counsel then tried again to ask Plaintiff what evidence he had of Defendants' motive.

> Q: What evidence do you have that [Defendants'] actions were a direct result of you helping other inmates write grievance or lawsuits?
>
> A: My job assignment. The grievances that I've written.
>
> Q: Right. Okay, so -- but my question is – is: What evidence do you have that any of their conduct not allowing you to go back to your job or writing you the disciplinary ticket or taking you to [segregation], what evidence do you have that they did that because you were helping other inmates?
>
> A: The fact that it happened.

> Q: Okay, so just that they did these things after you were helping other inmates?
>
> A: Yes.

(*Id.* at p. 60)

It is clear from this exchange that Plaintiff is simply making assumptions about Defendants' intentions and motivations. Speculation about a defendant's retaliatory motive cannot create a genuine issue of material fact. *Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008) (citing *Amadio v. Ford Motor Co.,* 238 F.3d 919, 927 (7th Cir. 2001). Additionally, the simple fact that Defendants' knew Plaintiff worked in the law library does not mean that any and all adverse actions they took against him were to retaliate against him because of his job. Similarly, the fact that some of the Defendants' actions came on the heels of Plaintiff's May 3, 2018, grievance against Lieutenant Jullious does not establish the requisite link, especially because there is no evidence that any of the Defendants' knew about the grievance. *See Manuel*, 966 F.3d at 681 ("Suspicious timing alone will rarely be sufficient to create a triable issue because '[s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment.'") (quoting *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011)). There is no other evidence in the record, such as a snide remark about or reference to Plaintiff's job or the grievance he filed, that could connect Plaintiff's protected speech to Defendants' conduct. The Court thus concludes that even viewing the record and all reasonable inferences in Plaintiff's favor, no reasonable jury could find that his job or his grievance were a motivating factor in—or even factored into—any of Defendants'

conduct in May 2018. Defendants are therefore entitled to summary judgment and the Court need not address any of Defendants' other arguments.

## CONCLUSION

For the reasons explained above, the Motion for Summary Judgment filed by Defendants Tom Humrickhouse, Jesse Johnson, Patrick Hoxworth, Dennis Pedigo, and Michael Clark (Doc. 91) is **GRANTED**. Plaintiff's claims are **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: May 10, 2024**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## NOTICE

Plaintiff is advised that this is a final decision ending his case in this Court. If Plaintiff wishes to contest this decision, he has two options: he can ask the undersigned to reconsider the Order or he can appeal to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal in the district court *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).

On the other hand, if Plaintiff wants to start with the undersigned, he can file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), but such a motion is not required to preserve his appellate rights. Any Rule 59(e) motion *must* be filed within twenty-eight (28) days of the entry of judgment. FED. R. CIV. P. 59(e), and the deadline *cannot* be extended. *See* FED. R. CIV. P. 6(b)(2). Any motion must also comply

with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010) ("This court has held that otherwise timely skeletal motions that fail to satisfy the requirements of FED. R. CIV. P. 7(b)(1) do not postpone the 30–day period for filing a notice of appeal . . . .").

So long as the Rule 59(e) motion is in proper form and filed no later than 28 days after the judgment is entered, the 30-day clock for filing a notice of appeal will be stopped. FED. R.APP. P. 4(a)(4). The clock will start anew once the motion is ruled on. FED. R.APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal, and the clock will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, the deadline for filing a notice of appeal can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.